# United States District Court
# Central District of California

| | |
|---|---|
| TRAMON WILSON-DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SSP AMERICA, INC., et al.,<br><br>Defendants. | Case No. 2:19-cv-04375-ODW(RAOx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [14] AND DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT [16]** |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion to Remand Action to State Court (ECF No. 14), and Defendants' Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) (ECF No. 16). For the following reasons, the Court **GRANTS** Plaintiff's Motion and **DENIES AS MOOT** Defendants' Motion.[1]

## II. BACKGROUND

Defendants SSP America, Inc. and SSP America LAX, LLC staff and operate restaurants in airports throughout California. (Decl. of Denise Visconti, Ex. A

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

("Compl.") ¶ 2, ECF No. 3-1.) Plaintiff Tramon Wilson-Davis worked for Defendants in Los Angeles, California. (Compl. ¶ 10.) On March 13, 2019, Wilson-Davis filed a putative class action against SSP America, Inc., SSP America LAX, LLC, and other unnamed Defendants in the Superior Court of the State of California for the County of Los Angeles. (*See generally* Compl.) Wilson-Davis alleges eight causes of action under California law, including: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to permit rest breaks; (5) failure to reimburse business expenses; (6) failure to provide accurate itemized wage statements; (7) failure to pay all wages due upon separation from employment; and (8) violations of Business and Professions Code sections 17200, *et seq.* (*See* Compl. ¶¶ 37–101.) Wilson-Davis seeks to represent a class of "[a]ll California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California within four years prior to the filing of this action to the date the class is certified" and who "were affected by Defendants' Labor Code, Business and Professions Code §§ 17200, and IWC Wage Order violations." (Compl. ¶¶ 18, 20.)

On May 20, 2019, Defendants removed the action to federal court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (Notice of Removal ("Removal"), ECF No. 1.) Defendants claim that federal question jurisdiction exist under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, due to the necessary interpretation of the Parties' collective bargaining agreement ("CBA"). (Removal 5–10.) Wilson-Davis now moves to remand. (*See* Mot.)

### III. LEGAL STANDARD

A federal court may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiffs. 28 U.S.C. § 1441. The removing party bears the burden to establish that federal subject matter jurisdiction exists. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). The right to remove a case to federal court is entirely a creature of statute. *See Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir. 1979). The

removal statute, 28 U.S.C. § 1441, allows defendants to remove a case originally filed in state court if it presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a), 1441(a)–(b). A case presents a "federal question" if a claim "aris[es] under the Constitution, laws, or treaties of the United States." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C. § 1331).

Whether removal jurisdiction exists must be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The well-pleaded complaint rule makes plaintiff the "master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, where the plaintiff can state claims under both federal and state law, he can prevent removal by ignoring the federal claim and alleging only state law claims. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).

There is, however, an exception to the "well-pleaded complaint" rule. Under the "artful pleading" doctrine, a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state law cause of action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981). If the claim arises under federal law, the federal court will re-characterize it and uphold removal. *Id.* The "artful pleading" doctrine applies to state claims that are completely preempted by federal law. *See Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.").

To support a finding of complete preemption, the preemptive force of the federal statute at issue must be "extraordinary." *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). For this reason, the complete preemption doctrine is narrowly construed. *See Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) ("The [complete preemption] doctrine does not have wide applicability; it is a narrow exception to the 'well-pleaded complaint rule' . . . ."). "[O]nly three areas have been

deemed areas of complete preemption by the United States Supreme Court: (1) claims under the Labor Management Relations Act; (2) claims under the Employment Retirement and Insurance Security Act (ERISA); and (3) certain Indian land grant rights." *Gatton v. T–Mobile USA, Inc.*, No. CV 03-130-DOC, 2003 WL 21530185, at *5 (C.D. Cal. Apr. 18, 2003) (citations omitted); *see also Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 585 (6th Cir. 1990).

## IV. DISCUSSION

Plaintiff moves to remand this action back to state court on the grounds that "the Court lacks subject matter jurisdiction and that no federal-question jurisdiction exists." (Mot. 1.) Specifically, Plaintiff argues that the LMRA does not preempt his state law claims. (Mot. 1)

The LMRA gives federal courts exclusive jurisdiction of "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'"[2] *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983) ("Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."); *see also Caterpillar*, 482 U.S. at 394 (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)) ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'"). Despite the broad preemptive effect of section 301, however, a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract" is not within its scope. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *see also Livadas v.*

---

[2] In *Raphael v. Tesoro Refining and Marketing Co. LLC*, this Court analyzed the purpose of LMRA preemption in more depth. No. CV 15-2862-ODW (Ex), 2015 WL 3970293 (C.D. Cal. June 30, 2015).

4

*Bradshaw*, 512 U.S. 107, 123–24 (1994) ("[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, . . . it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action may go forward." (citations omitted)).

The Ninth Circuit has articulated a two-part test to determine whether a cause of action is preempted by the LMRA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, the Court must determine if the "asserted cause of action involves a right conferred upon an employee by virtue of state law," independent of a CBA. *Id.* If the right exists solely because of the CBA, then the claim is preempted, and analysis ends. *Id.* Second, if the right exists independently of the CBA, the Court must then consider whether resolving the dispute is nevertheless "substantially dependent on [the] analysis of a [CBA]." *Id.* "If such dependence exists, then the claim is preempted by section 301; if not, then the claim" is left to state courts to handle in accordance with state law. *Id.* at 1059–60.

Here, Defendants argue that the LMRA preempts Plaintiff's claims under both steps of the *Burnside* analysis. The Court will consider Defendants' arguments under each step in turn.

### A. *BURNSIDE* STEP ONE

Defendants' only argument under step one of the *Burnside* analysis is that the CBA, not state law, creates Plaintiff's right to overtime compensation. (Opp'n to Mot. ("Opp'n") 6, ECF No. 17.) For support, Defendants rely on California Labor Code section 514, which provides that:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

*See also* Wage Order No. 5-2001(3)(L) (same).  Section 514 is an affirmative defense that must be raised by Defendants.  *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 954 (C.D. Cal. 2014).

Defendants' argument fails at step one of the *Burnside* analysis because simply asserting the section 514 exemption as a defense is not a basis for preemption.  It is well established that "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated."  *Caterpillar*, 482 U.S. at 399.  Accordingly, "a defense based on the terms of a CBA is not enough to require preemption."  *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 690 (9th Cir. 2001) (citing *Caterpillar*, 482 U.S. at 399).  In the next section, the Court will analyze Defendants' argument that interpretation of the CBA is nonetheless necessary to determine whether the exemption applies.

**B.     *BURNSIDE* STEP TWO**

The bulk of Defendants' preemption arguments are based on step two of the *Burnside* test.  Defendants argue that the Court would have to interpret the CBA to resolve each of Plaintiff's state law claims.  (*See* Opp'n 1.)

*1.     Minimum Wage and Overtime Claims*

As an initial matter, Defendants argue that the LMRA preempts Plaintiff's minimum wage claims but fail to explain why.  (*See* Opp'n 8–10.)  There is no indication that the Court would have to look at anything other than Schedule A of the CBA or the employees' pay stubs to determine whether Defendants paid their employees at least the minimum wage set under California law.  *See Burnside*, 491 F.3d at 1060 (distinguishing between merely "'looking to' versus interpreting the CBA"); (*see* Opp'n 9 (admitting that "Schedule A of the CBA sets forth the 'minimum' rates of pay for each position").)

As to overtime, Defendants argue that if the section 514 exemption does not apply, the Court will nevertheless have to interpret the CBA to determine the "regular

rate" for purposes of section 510. (Opp'n 9.) According to Defendants, to determine the "regular rate," the Court would have to interpret several provisions, including: rate increases by supervisors (*see* Decl. of Pat Banducci Ex. 1 ("CBA"), art. 4.6, ECF No. 4); rate increases based on years of service (*see* CBA, sched. A); tips and gratuities (*see* CBA, arts. 4.4, 12.10); rates for relief employees (*see* CBA, art. 4.5); rates for time between meetings and the start of the shift (*see* CBA, art. 4.9); reporting time (*see* CBA, art. 4.9); and rates for work less than scheduled shift (*see* CBA, art. 5.9). (Opp'n 9.)

The Court is not convinced. It is not enough for Defendants to provide a laundry list of provisions that they allege the Court must interpret to resolve Plaintiff's claims; Defendants must explain *why* interpretation, as opposed to mere reference to the CBA, is necessary. *See Burnside*, 491 F.3d at 1071 (rejecting preemption after a "cursory examination" of provisions in three different CBAs).

To begin, what constitutes the "regular rate" is a question of law. *See Bart v. Parkview Cmty. Hosp. Med. Ctr.*, No. EDCV 14-1614-JGB (DTBx), 2014 WL 12703022, at *3 (C.D. Cal. Sept. 18, 2014) ("Depending on California's definition of 'regular rate,' 'a court can calculate the exact amount of overtime pay that is owed by looking to the CBA[s] and the past wages paid."); *see also Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122 (C.D. Cal. 2011) (noting that courts look to the federal Fair Labor Standards Act to interpret "regular rates" under California law). Thus, the real inquiry is whether, once the reviewing court determines the universe of factors to be included in the calculation of regular rate, it must then interpret the CBA to ascertain those factors.

In *Raphael v. Tesoro Refining and Marketing Co.*, this Court denied the plaintiff's motion to remand based on the "plethora of provisions in need of interpretation throughout the eight separate CBAs covering Raphael and the aggrieved employees he seeks to represent." 2015 WL 3970293, at *6. The defendant in that case "describe[d] the complexity involved in calculating the proper wage and

premium wage rates under only a single CBA, *highlighting essential terms* that . . . need[ed] to be interpreted." *Id.* (emphasis added). The Court concluded that those provisions "paint[ed] a picture far from 'straightforward and clear,' and that picture becomes increasingly muddied as the seven other CBAs at issue come into play." *Id.*

Unlike the CBAs in *Raphael*, which created a contractual labyrinth of provisions, the single CBA here presents a straightforward map to determining an employee's regular rate, with Schedule A as the starting point. (*See* CBA, sched. A.) Depending on the employee's years of service and tip status, the rate may increase by set amounts. (*See id.* (for example, "[a]ll tipped employees with 2 years or more of service will receive a wage increase of $0.80 or go to the Upon Ratification scale listed above, whichever is greater").) A supervisor can also increase this minimum rate at his or her discretion. (*See* CBA, art. 4.6.) If an employee is relieving another, Defendants must pay him or her no less than "the classification rate of the employee being relieved for the time of the relief period, provided the employee doing the relief works a minimum of one and one-half (1[.5]) hours in the higher classification." (CBA, art. 4.5.) Employees scheduled to work a ten-hour shift must be paid for the full time even if they work less than ten hours, unless it is because the employee voluntarily left early. (*See* CBA, art. 5.9.) The policies for compensation of time between meetings and gratuities are similarly straightforward and would require no interpretation for purposes of inclusion in the calculation of regular rate.[3] In sum,

---

[3] As to tips, article 4.4 of the CBA states that "[a]ll tips and gratuities are the property of the employee and shall not be considered other than his sole property." Tips should not be comingled with business funds and the employees must always have access to their tips. (CBA, art. 4.4.) Although the question of tips in the context of banquets is more complicated, it appears to require no more than simple math. (CBA, art. 4.4. ("Banquet tips or gratuities shall be distributed by the Employer according to a formula provided by the Union, which shall specify the specific dollar amount or percentages to be given to each employee.").) Article 12.10 does not require interpretation either. (*See* CBA, art. 12.10 (listing simple guidelines for automatic gratuity for customer checks of $75 or more).) On the other hand, article 4.7 deals with compensation for mandatory meetings. Defendants agree to compensate employees for mandatory meetings outside of regular shift hours. (CBA, art. 4.7.) The CBA also sets clear conditions for compensating employees for time spent waiting in between shifts and meetings. (CBA, art. 4.7.)

Defendants fail to explain why the Court would have to interpret these provisions rather than simply reference them to calculate the employees' regular rate.

Defendants' contention that the Court will have to interpret the CBA "to determine when employees actually worked 'overtime' and the premium payments owed if they did" is also unpersuasive. (Opp'n 9.) First, Defendants' argument as to the amount of premium payments owed is duplicative of the previous inquiry into regular rates. Second, if the state court decides that the section 514 exemption does not apply, the question of whether the employees actually worked overtime is determined solely by reference to state law and the employees' evidence of hours worked (e.g., time records and testimonial evidence).

Defendants cite *Firestone v. Southern California Gas Company* where the Ninth Circuit agreed that preemption applied where the Court would have to interpret the CBA to determine what the employees' "regular rate" was. 219 F.3d 1063, 1066 (9th Cir. 2000). *Firestone* is distinguishable for two main reasons. First, the parties there disputed the method for calculating the regular rate, which would then be used to determine the required overtime premium. *See id.* at 1065–66 ("The method of calculating compensation for these hours is the subject of some dispute by the parties."). There is no evidence in the record about such a dispute here. Second, the compensation formula in that case was complicated because it was based on a "flat rate per meter read" variable that nonetheless incorporated actual hours worked when calculating overtime. *See id.* ("[T]he unassigned overtime hours posted were computed as follows: (assigned hours/actual hours) X .3334 X (actual hours-8) . . . multiplied by one and one-half the hourly rate set forth in the collective bargaining agreement and added to the flat rate for the assigned hours."). As discussed already, the compensation scheme in this case is straightforward. To the extent the Court must factor in additional provisions from the CBA, their application requires nothing more than simple, undisputed math. *See Bart*, 2014 WL 12703022, at *3 (holding that no interpretation was needed to calculate "regular rate"); *see also Peters v. RFI Enters.,*

*Inc.*, No. CV 18-1187-BLF, 2018 WL 3869564, at *6 (N.D. Cal. Aug. 15, 2018) (finding that no interpretation of the CBA was needed where it clearly lays out specific instructions to calculate the regular rate).[4]

For these reasons, the LMRA does not preempt Plaintiff's state law minimum wage and overtime claims.

### 2. *Meal Period and Rest Break Claims*

Defendants raise two main arguments as to Plaintiff's meal period and rest break claims.[5] First, Defendants contend that because the Court must interpret the CBA to determine the employees' "regular rate," *see supra* Part IV.B.1, it follows that interpretation is needed to calculate the "premium" payment that the Labor Code's meal and rest break provisions require. (Opp'n 10.) Second, Defendants argue that the Court will need to "interpret and apply the terms in the CBA governing meal and rest periods to determine whether Defendants provided the opportunity to take meal periods and authorized and permitted rest breaks in accordance with California law." (Opp'n 10.)

As to Defendants' first argument, the Labor Code and applicable Wage Order require employers to provide meal and rest breaks subject to certain conditions. *See* Cal. Lab. Code §§ 226.7(b), 512; Wage Order No. 5-2001(11) to 5-2001(12). If an employer fails to make such breaks available, he or she must pay the employee "one additional hour of pay at the employee's regular rate of compensation for each

---

[4] Defendants also cite *McKinley v. Southwest Airlines Co.*, No. CV 15-2939-AB (JPRx), 2015 WL 2431644 (C.D. Cal. May 19, 2015), in support of their argument. (Opp'n 10.) There, the court held that it would have to "interpret the CBA to determine whether the types of remuneration Plaintiff identifies fall into FLSA's exceptions." *Id.* at *5. Here, for the reasons already stated, the Court is not convinced that it would have to interpret, as opposed to merely reference, the CBA to arrive at the regular rate. Unlike the CBA at issue in *McKinley*, the CBA here clearly outlines the compensation the employees expect from Defendants. *See id.* (finding preemption because the court would have to "analyze the CBA to assess whether its provisions would cause Plaintiff to expect the payments regularly").

[5] Defendants also argue that the Court must interpret the CBA's grievance and arbitration provisions to resolve Plaintiff's meal and rest period claims. (Opp'n 10–11.) The Court addresses Defendants' grievance and arbitration arguments separately in Part IV.B.5, *infra*.

workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c); Wage Order No. 5-2001(11)(B) & 5-2001(12)(B).

Defendants' first argument fails because the Court already concluded that no interpretation is necessary to determine an employee's "regular rate." Accordingly, the Court can also calculate the "premium" payment required under section 226.7(b) and the applicable wage order without interpreting the CBA.

As to the second argument, the CBA is unmistakably clear regarding meal and rest breaks. It provides that "[t]he Employer will comply with wage and hour laws with regard to breaks and meal periods." (CBA, art. 5.11.) That further factual disputes or questions of interpretation of California law may arise does not justify preemption. The CBA cannot be clearer. Defendants' misleading argument borders on frivolous and is not well-taken.

Accordingly, the LMRA does not preempt Plaintiff's meal and rest period claims.

### 3. *Business Expense Reimbursement Claims*

Defendants argue that "Plaintiff's business expense reimbursement claim is entirely dependent on interpretation of the CBA." (Opp'n 11.) Again, their argument is conclusory and unpersuasive.

Section 2802 of the California Labor Code requires employers to indemnify their employees "for all necessary expenditures or losses incurred by the employee[s] in direct consequence of the discharge of [their] duties." Cal. Lab. Code § 2802(a).[6]

Here, Defendants do not explain why the Court would need to reference the CBA at all, let alone interpret it. *See Hoover v. Am. Income Life Ins. Co.*, No. EDCV 10-1442-GW (PLAx), 2010 WL 11556799, at *4 (C.D. Cal. Dec. 2, 2010) (rejecting argument that court would have to interpret CBA to resolve business expense reimbursement claim). The CBA provides for reimbursement for some expenses,

---

[6] Plaintiff's claims are also under Labor Code section 2800, which requires employers to "indemnify [their] employee[s] for losses caused by the employer's want of ordinary care."

such as uniforms and work shoes. (*See* CBA, art. 14.) However, these negotiated concessions do not establish preemption. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412–13 (1988) ("[T]he mere fact that a broad contractual protection . . . may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract."); *see also Burnside*, 491 F.3d at 1071. For these reasons, Defendants' argument as to reimbursement of business expenses fails.

### 4. *Waiting Time Penalty, Wage Statements, and UCL Claims*

As to Plaintiff's remaining claims under Labor Code sections 201 to 203 ("waiting time" claims) and 226 ("Wage Statement" claims), and Business and Professions Code sections 17200 *et seq.* ("UCL" claims), Plaintiff argues they are derivative of his first five claims, and thus, also not subject to preemption. (Reply 8, ECF No. 18.) Defendants agree that these claims are derivative. (Opp'n 12.) However, because Defendants contend that the underlying claims are preempted, they argue that these remaining claims are also preempted by derivation. (Opp'n 12.)

The Court agrees with Plaintiff. "When a district court remands a case to state court based on a preemption analysis of the relevant wage claims, it is unnecessary to conduct an analysis of related state law claims[] . . . ." *Bonilla v. Starwood Hotels & Resorts Worldwide, Inc.*, 407 F. Supp. 2d 1107, 1113–14 (C.D. Cal. 2005). Defendants, however, raise an argument that appears to contradict the holding in *Bonilla* and require an analysis of Plaintiff's waiting time claims.

Defendants claim that the LMRA preempts Plaintiff's waiting time claims because the Court would have to interpret the CBA's compensation provisions to determine whether Defendants "willfully" failed to pay Plaintiff and the class their owed wages. (Opp'n 11–12.) According to Defendants, "a failure to pay is not 'willful' if the amount of wages owed to the employee is unclear." (Opp'n 11 (citing *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8–9 (1981)).)

Under Labor Code section 203, "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date . . . until paid or until an action . . . is commenced; but the wages shall not continue for more than 30 days." "As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act *which was required to be done*." *Barnhill*, 125 Cal. App. 3d at 7; *see also* Cal. Code Regs. tit. 8, § 13520 ("[A] good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203.").

Here, the Court concluded already that the CBA's compensation provisions are clear and unambiguous, and thus require no interpretation. It appears, however, that Defendants are arguing that a defendant can establish preemption simply by adopting a different interpretation of the CBA, no matter how wrong or unsupported. Not so. "[A] hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." *Cramer*, 255 F.3d at 692. Defendants' "proffered interpretation argument must reach a reasonable level of credibility." *Id.* (quoting *Livadas*, 512 U.S. at 125) ("The argument does not become credible simply because the court may have to consult the CBA to evaluate it; 'look[ing] to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption."). Thus, Defendants' argument for preemption of the waiting time claims fails, and the Court finds that the LMRA does not preempt Plaintiff's derivative claims.

*5.  Grievance Procedures Under the CBA*

Finally, according to Defendants, the CBA establishes a mandatory grievance and arbitration procedure that covers all of Plaintiff's claims. (Opp'n 13.) Defendants argue that the Court will need to "interpret and apply the CBA to determine whether Plaintiff has complied with the mandatory grievance and arbitration procedures governing his employment and, if not, whether he can continue to pursue a claim for relief." (Opp'n 13.)

"[A] court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering section 301 preemption." *Burnside*, 491 F.3d at 1060. Thus, "for a grievance or arbitration provision to implicate preemption, the 'union-negotiated waiver of employees' statutory right to a judicial forum' must be 'clear and unmistakable.'" *Munoz v. Atl. Express of L.A., Inc.*, No. CV 12-6074-GHK (FMOx), 2012 WL 5349408, at *4 (C.D. Cal. Oct. 30, 2012) (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80–81 (1998)).

The CBA defines a "grievance" as "any claim or dispute between the Employer and the Union or between the Employer and any employee which involves interpretation, application or enforcement of this Agreement disputed between the parties." (CBA, art. 10.1.) The CBA also outlines a two-step procedure for the handling of grievances. (*See* CBA, art. 10.2.) If the parties cannot resolve the grievance through the procedure in article 10.2, they may agree to mediation. (*See* CBA, art. 10.3.) A party may also elect to proceed to arbitration by notifying the other party within fifteen days from receipt of a written response after step two of the grievance procedure or within fifteen days after the mediation hearing. (*See* CBA, art. 11.1.)

Defendants cite no cases preempting a plaintiff's state law claims based on an analogous version of a grievance or arbitration provision.[7] And for good reason. The CBA's language here is not a "clear and unmistakable" waiver of the employees' rights to pursue their state claims. The CBA makes clear that its grievance and arbitration procedures apply only to claims that involve "interpretation, application or enforcement of th[e] [CBA]." (CBA, art. 10.1.) Plaintiff's claims, brought

---

[7] The cases that Defendants cite are not relevant to the question of whether preemption applies due to the CBA's grievance and arbitration procedures. *See Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313 (9th Cir. 1990) (dealing only with failure to exhaust internal grievance procedures); *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988) (same), *overruled by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014); *Kaufman v. Pac. Mar. Ass'n*, No. C-12-5051-EMC, 2013 WL 1560300 (N.D. Cal. Apr. 12, 2013) (same).

specifically under state law, involve neither. *See Wright*, 525 U.S. at 73 (finding no waiver in phrase, "[t]he Union agrees that this Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment"); *Vasserman*, 65 F. Supp. 3d at 965 (finding no waiver where grievance and arbitration procedures applied only to disputes "aris[ing] out of the interpretation or application" of the provisions of the CBA). Accordingly, preemption does not apply on this basis.

In summary, the Court would not need to interpret the Parties' CBA to resolve any of Plaintiff's state law claims. Thus, the Court does not have subject matter jurisdiction to hear his class claims.[8]

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED** (ECF No. 14), and Defendants' Motion to Dismiss is **DENIED AS MOOT** (ECF No. 16). It is hereby ordered that this action is **REMANDED** to the Superior Court of California, County of Los Angeles, Case No. 19STCV08579, located at 111 North Hill Street, Los Angeles, California 90012. The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

January 21, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[8] The Parties also dispute whether the CBA's effective date makes a difference. (*See* Mot. 6; Opp'n 14.) The Court need not rule on this issue since it has already found that no interpretation of the CBA is necessary at all.